IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

LAURA J. SUMMERS,

        Plaintiff,

v.

BANK OF AMERICA, N.A.,        Case No. 5:12-CV-00038-MFU

        Defendant.

### REQUEST FOR HEARING FOR MOTION FOR SANCTIONS
### FOR DEFENDANT'S FAILING TO COMPLETE SETTLEMENT

      Plaintiff, by counsel, requests that this Court convene a hearing for a Motion for Sanctions for Defendant's failing to complete settlement of this matter. Based on the facts presented below, Plaintiff's counsel ask that this hearing be scheduled in Harrisonburg and that Bank of America be required to have a representative attend who can explain and take responsibility for the events that have occurred to date.

### FACTS IN SUPPORT OF REQUEST FOR HEARING

**A.    The parties agree to settle the case, are ordered to complete it before the end of August, and negotiate the terms of a settlement and release document.**

      As part of a settlement conference, the parties met on July 25, 2012, in the Charlottesville Division, and negotiated a settlement before Magistrate Judge B. Waugh Crigler. As provided in the Magistrate's Report (Dkt. 15), the parties were given until August 27, 2012, to effectuate that settlement and submit an agreed order of dismissal. One of the terms of the agreement was that two checks would be issued by Bank of America: one to plaintiff for the proceeds that go directly to her, and one to her counsel for the attorney's fees owed. The benefits of this arrangement included Ms. Summers getting her money in her hand when the checks arrived, and

reduction in attorney time spent preparing a separate settlement agreement regarding disbursing money from a trust account.

After Bank of America drafted the first version of the proposed release agreement, the parties' counsel repeatedly conferred and modified a few of the paragraphs of Bank of America's proposed release agreement.  As of August 10, 2012, Plaintiff's counsel had given approval to the language and Defendant's counsel needed only to get his client's approval to the final terms; once negotiations of the terms were done, the final dollar split between the attorney's fees and proceeds to Plaintiff could be known and put in the agreement.

On August 17, 2012, Ms. Summers informed her counsel that her father had been diagnosed with a very advanced and aggressive terminal cancer.  Her parents lived very close to Ms. Summers and were an integral part of her daily life.  She had to take time off from work and stay at the hospital with her mother.  She also learned that her father had taken out a reverse mortgage on the home, and that because the loan agreement did not include her mother, her mother would have to move from that home.  Modifications were required to Ms. Summers' home so that her mother could move into it.  As a result, Ms. Summers really needed to be focusing on her helping her mother, and had a personal and urgent need for the money that Bank of America had promised her back in July.

On August 20, 2012, Plaintiff was informed that all the wording had been agreed to by Bank of America.

**B.     Ms. Summers signs the release agreement and waits for Bank of America to perform.**

When she learned that the agreement had been finalized, Plaintiff made an appointment with her counsel and came to the offices of HooverPenrod.  On August 21, 2012, Ms. Summers

signed the release agreement. She then reasonably expected that in a short period of time she could come pick up her settlement proceeds.

The signed release agreement and completed W-9's were sent to Bank of America's counsel by email on August 21, 2012. From that time forward, all that needed to happen was for Bank of America to issue and send the two checks in the agreed amount, and to sign the settlement agreement.

By the end of August, Ms. Summer's father had passed away. One solace for Ms. Summers was knowing that very shortly she could drive to Harrisonburg and pick up the check that would resolve the matter. Instead, Bank of America delayed signing the release that had been negotiated and signed by Ms. Summers.

Monday, August 27, 2012, was the original date that this matter was ordered to be concluded. Because Bank of America had not sent the checks nor the signed agreement, Plaintiff's counsel conferred with Defendant's counsel. They agreed to notify the court, by email to Magistrate Judge Crigler, that Ms. Summers had signed a Settlement Agreement, but she was still waiting for Bank of America to sign it and deliver the checks. Another week was requested to conclude the matter. On that day, Bank of America' counsel also sent an email to Plaintiff's counsel that stated in part "My guess is that the checks will be mailed by Thursday." If that had happened, the checks would have been mailed on the 30th of August.

     **C.**     **Bank of America ordered to effectuate the settlement.**

By the following week, Bank of America still had not signed the release agreement nor had it sent the checks. After a series of emails, including negotiating on how much additional time to request, the parties jointly submitted a Motion for Extension of Time. (Dkt. 17). That joint motion reiterated that that a settlement has been reached between the parties, that Ms.

Summers had signed a Settlement Agreement, that a representative from Bank of America had not yet signed it, and Bank of America had not delivered the settlement proceeds to Plaintiff.

The parties jointly requested that they be given until September 12, 2012, to complete the settlement process. Plaintiffs hoped that another Order from this Court would induce Bank of America to comply with its duty to send the checks and sign the agreed release. An Order of this Court was issued that (Dkt. 18) that required the parties to complete settlement and submit an order of dismissal by September 12, 2012.

By September 12, 2012, Bank of America had neither signed the release agreement nor had it delivered the checks.

**D.     Bank of America still does not comply even after being ordered a third time to complete the settlement.**

On September 13, 2012, a telephonic conference was conducted by Magistrate Judge Crigler. At that hearing, Defendant's counsel presented how long it would take to have checks delivered to Plaintiff's counsel's office. By Order dated September 13, 2012, Defendant was ordered to deliver the settlement proceeds "as provided in the settlement agreement" to Plaintiff's counsel by noon on September 18, 2012. Plaintiff was ordered to file an order of dismissal within three days of receipt of the funds.

**1.     The noncompliance regarding the two check requirement.**

On Tuesday, September 18, 2012, Bank of America delivered one check to Plaintiff's counsel's office that was for the combined amount and had both Plaintiff's name and HooverPenrod LLC on it. Because it was one check rather than two, Plaintiff could not simply pick up this check and receive her money. Instead, the normal process would be for her come by and sign the check, and then after it had cleared the HooverPenrod trust account, she could then come pick up her checks. Because of the way banks are now handling checks, the length of time

to ensure a check is completely cleared and can be disbursed is variable. Law firms routinely wait two weeks for a check to clear to ensure their escrow account does not have problems. Consequently, Bank of America's breach of the agreement to provide two checks caused additional delay in Ms. Summers getting her funds. The only issue would be how much more delay.

To shrink that delay as much as possible, the undersigned rearranged his Tuesday afternoon schedule, and met Ms. Summers at HooverPenrod on September 19, 2012, in the afternoon. Ms. Summers' and her counsel went to the local Bank of America branch in downtown Harrisonburg to convert the one check into two checks: one payable to Ms. Summers and one to HooverPenrod. This would ensure that Ms. Summers received her money only one day after the time period ordered by the Court, and with only one relatively quick visit to Harrisonburg.

At the bank, Ms. Summers and her counsel were informed that Bank of America would not cash its own check even though it was properly endorsed. Around 4:30 p.m., they presented the check at Bank of America and asked for two cashier's check that totaled the sum shown. Bank of America refused to process its own check. The Bank of America representative insisted that, because the check had the law firm's name on it, the check had to go through law firm's account.

Rather than allow Bank of America to continue making a bad situation worse, Ms. Summers and her counsel stayed in the Bank of America until Bank of America agreed to accept its own check and issue two cashier's checks. This required repeated calls to Bank of America's outside trial counsel, and then both Ms. Summers and her counsel sitting down with the local manager and showing the various orders that have been entered in this matter. Finally, about

thirty minutes after the branch was closed, Ms. Summers and her counsel were able to obtain the two checks.

### 2. The noncompliance regarding executing the settlement agreement.

By email on Tuesday, September 18, 2012, counsel for Bank of America also sent Plaintiff's counsel what was represented to be the executed settlement agreement. The document was signed on September 17, 2012. After review of this document, on September 20, 2012, Plaintiff's counsel informed Bank of America's counsel that it was not the same agreement. Material alterations where unilaterally made in the agreement, and it was not the agreement that Ms. Summers signed. It did not even have the same number of paragraphs. Bank of America had simply altered the agreement to its own liking rather than sign the agreement its counsel had negotiated.

To date, Plaintiff's counsel has not received a signed copy of the agreement that Ms. Summers' signed. Ms. Summers does not agree to the way Bank of America materially changed the agreement. Consequently she has not yet submitted a Dismissal Order. She waited until the close of business on Monday, September 24, 2012, to give Bank of America time to execute a deliver a copy of the agreed release document. As of the time of this filing, nothing has been received.

### CONCLUSION

The initial Order of this Court required settlement to be completed by August 27, 2012. Plaintiff had signed the agreed release agreement by August 21, 2012, and Bank of America could and should have sent two checks and an executed release agreement prior to August 27, 2012. It should have done this when it requested the first additional week. It should have done this when it requested additional time and a second Order was entered that gave it until

6

September 12, 2012.  It should have complied with the third Order of this Court and sent two checks and a signed release last week.  Because it failed to comply with these Orders, Ms. Summers has been greatly inconvenienced during a time of grief, and her counsel have been unnecessarily required to spend time addressing Bank of America's noncompliance.  Therefore, a hearing for sanctions should be conducted.

                                                Respectfully submitted,
                                                LAURA J. SUMMERS

By Counsel

/s/ Thomas D. Domonoske
Thomas D. Domonoske (VSB #35434)
461 Lee Avenue
Harrisonburg, Virginia  22802
(540) 442-7706
tomdomonoske@earthlink.net



Grant D. Penrod (VSB #65818)
HOOVER PENROD, PLC
342 South Main Street
Harrisonburg, Virginia  22801
(540) 433- 2444
(540) 433-3916 (facsimile)
gpenrod@hooverpenrod.com

*Counsel for Plaintiff*

      I certify that I sent a copy of the foregoing to Defendant's counsel by filing this with the Court's ECF filing system.  It will send a copy to

C. Paige Bobick
McGuireWoods LLP
Court Square Building
310 Fourth Street, N.E.
Suite 300
Charlottesville, VA 22902-1288
434.977.2593 (Direct Line)

434.980.2273 (Direct FAX)
pbobick@mcguirewoods.com

/s/ Thomas D. Domonoske
Thomas D. Domonoske