**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division**

LAURA J. SUMMERS,

    *Plaintiff*,

vs.

BANK OF AMERICA, N.A.,

    *Defendant.*

Civil Action No. 5:12-cv-00038-MFU

**RESPONSE IN OPPOSITION TO PLAINTIFF'S
REQUEST FOR HEARING ON MOTION FOR SANCTIONS AND
MOTION FOR ENFORCEMENT OF SETTLEMENT AGREEMENT**

Defendant Bank of America, N.A. ("BANA"), by counsel, hereby submits this Response in Opposition to Plaintiff's Request for Hearing on Motion for Sanctions and Motion for Enforcement of Settlement Agreement (the "Response") and states as follows:

**I.    INTRODUCTION**

The allegations contained in Plaintiff's Request for Hearing for Motion for Sanctions for Defendant's Failing to Complete Settlement (the "Request") are simple, straightforward and, fortunately for everyone involved, now fully resolved. Plaintiff and BANA (collectively, the "Parties") have fully executed the agreed-upon settlement agreement (the "Agreement"), and Plaintiff and her attorneys have received (and cashed) all settlement funds. Nonetheless, Plaintiff refuses to withdraw her moot Request – one which by its very name is no longer accurate, as the settlement, at least on BANA's end, has been completed.

The Parties engaged in cordial, effective resolution efforts even prior to the filing of the Complaint in Rockingham County, Virginia on February 23, 2012.  Before BANA formally engaged its undersigned counsel in this matter, Plaintiff's counsel contacted McGuireWoods LLP's Norfolk, Virginia office in an attempt to halt foreclosure proceedings on property located at 99 Monger Hill Road, Elkton, Virginia (the "Property").  BANA's counsel, although not yet retained, complied as a matter of professional courtesy and successfully stopped a foreclosure sale scheduled for the following Monday, February 27, 2012.

From that point forward, BANA and its counsel worked tirelessly in conjunction with Plaintiff's counsel to achieve and implement a loan modification, one that Plaintiff desperately sought in her Complaint. (Doc. 1-1.)  In fact, after the case was removed to this Court on April 18, 2012, (Doc. 1), Plaintiff executed the permanent loan modification nine (9) days later on April 27, 2012.  Having resolved the impetus for the lawsuit, the Parties then stipulated to a Consent Order to stay proceedings in this matter for sixty (60) days to discuss a global settlement. (Doc. 7.)  However, despite having the modification in place and her loan being returned to normal servicing by BANA in June 2012, Plaintiff felt the need to file her First Amended Complaint ("FAC") on July 2, 2012. (Doc. 10.)

Again unable to effectuate a final settlement, the Parties asked the Hon. Michael J. Urbanski to refer this matter to Magistrate Judge B. Waugh Crigler for a settlement conference (the "Conference").  On July 9, 2012, Judge Crigler entered an Order scheduling the Conference for July 25, 2012. (Doc. 12.)  The Parties were successful in resolving the matter in full on this date, leaving the precise wording of the Agreement, its execution by both sides, Plaintiff's receipt of the settlement funds, and a dismissal of this lawsuit as the only open items.

After several edits, remarks and commentary from counsel on both sides, the Agreement was reduced to writing. Regrettably, the Agreement took longer than anyone wanted or expected to fully execute. On August 27, 2012, the Parties contacted Judge Crigler via e-mail to inform the Court of the status of the settlement. When more time was needed, the Parties then agreed to file a joint request for an extension of time to September 12, 2012 in order to conclude the matter. (Doc. 17.) Despite efforts by the Parties to expedite the situation, it became evident that this new deadline would not be met. At that time, Plaintiff's counsel requested a telephonic conference before the Court for the following day, September 13, 2012. (Doc. 19.) During this conference, the Court ordered the check produced by September 18, 2012. (Doc. 21.) BANA substantially complied with the Order, and Plaintiff received the settlement funds on September 18, 2012. (Doc. 22, Req. 4.) Ms. Summers has since cashed BANA's check. Yet, Plaintiff's counsel persisted in filing this misguided, malevolent motion for sanctions. Since filing the Request, ***the original version of the Settlement Agreement was fully executed, as demanded, and Plaintiff and counsel have retained their settlement funds.*** Notwithstanding multiple requests of defense counsel, Plaintiff's counsel has refused to submit a proposed order to the Court for dismissal of this matter *with prejudice*. This is in direct violation of the Court's Order on settlement which states that "[w]ithin three days after receipt of the settlement funds by plaintiff's counsel, an order of dismissal is to be submitted for entry by the presiding District Judge." (Doc. 21.)

Plaintiff's actions leave BANA no choice but to continue in this superfluous post-settlement motions practice and hereby file a Motion for Enforcement of Settlement Agreement. At this time, BANA has substantially complied with all the terms of the Agreement and is entitled to obtain the benefit of its bargain and have this case dismissed *with prejudice*.

## II. POST-MEDIATION STATEMENT OF FACTS

After the Conference, counsel for both sides entertained various drafts of what would eventually become the Agreement. On August 3, 2012, while still discussing the language, BANA informed Plaintiff's counsel that pursuant to a new policy, it could no longer issue checks directly to counsel for plaintiffs alone; rather, all checks needed to have both the plaintiff(s) and their attorney(s) jointly named, to the extent counsel was requested to be a payee on any settlement checks. However, given the timing of the mediation in relation to BANA's new policy and the terms discussed at the Conference, BANA's counsel offered to attempt to accommodate Plaintiff, hoping the situation would be grandfathered in as an exception. BANA agreed to this allowance.

On August 21, 2012, the same day that Plaintiff signed the Agreement, BANA was forwarded a copy for execution. Unintentionally, and certainly without malice, there was a delay in getting the Agreement to the proper authorized signatory within BANA. The Parties submitted their Joint Request for Extension to Complete Settlement on September 5, 2012, (Doc. 17). On September 7, 2012, the Agreement was submitted from BANA's Legal Department to an appropriate BANA representative for signature. It soon became evident, however, that the new deadline of September 12, 2012 did not provide adequate time to fulfill the terms of the Agreement. At that time, the Parties appeared before the Court via telephonic conference on September 13, 2012. (Doc. 19.) The Court ordered the settlement funds produced to Plaintiff by September 18, 2012. (Do. 21.) In the next few days, after detailed instructions from its outside counsel, the BANA Legal Department sent a check request to the Accounts Payable Department, pursuant to the terms of the Agreement, demanding two (2) checks – one to Plaintiff and one to her attorneys. A clerical error ensued when an unknown

BANA employee in Accounts Payable failed to read the complete notes from the Legal Department and instead issued one check for the total amount of the settlement funds, payable jointly to Plaintiff and her counsel.

Thus, although Plaintiff received the funds by the Court's deadline of Tuesday, September 18, 2012, the check was not in the form anticipated. As a result, Plaintiff was delayed briefly in cashing BANA's check. However, BANA substantially complied with the Court's Order, and Plaintiff received all settlement funds agreed upon *at least five days prior to Plaintiff filing this Request for Sanctions*.

On the same day Plaintiff received the funds, BANA's counsel received and forwarded to Plaintiff's counsel a copy of the Agreement executed by a BANA representative. Inadvertently, the BANA representative executed an earlier version of the proposed Agreement that counsel had considered during negotiations. Indeed, the version of the Agreement executed by BANA differed only slightly from the final version agreed upon by counsel. Thus, executing the wrong version was merely an oversight by BANA and was certainly not done for any malicious reason. Certainly, as Plaintiff's counsel pointed out the discrepancy, BANA's counsel assured opposing counsel that this was something that could be easily remedied. Plaintiff's counsel *agreed that he would take no action until he spoke with BANA's counsel the following Monday*, since BANA's counsel was traveling all day on Friday, September 21, 2012.

Nonetheless, on Monday, September 24, 2012 without ever having the chance to speak with Plaintiff's counsel, BANA received the electronic notice of the filing of the Request. Later that week, as promised, BANA executed the correct version of the Agreement and counsel immediately forwarded it to Plaintiff's counsel. In an effort to avoid this drain on precious

5

judicial resources, BANA's counsel sent the Agreement via e-mail to Plaintiff's counsel and requested Plaintiff to withdraw her Request, as it was now moot. Notwithstanding BANA had now fully complied with the Agreement, Plaintiff and her counsel insist on pursuing sanctions and have refused to dismiss the lawsuit as required by the settlement.

Finally, on Wednesday, October 3, 2012, BANA's counsel again telephoned Plaintiff's counsel to inquire about a withdrawal of the Request and to check on the status of the proposed order of dismissal *with prejudice*, one that was to have been submitted to the Court for entry by September 21, 2012 (adding three (3) days to the date Plaintiff received the funds), or, ***at the very latest***, by Monday, October 1, 2012 – three (3) days after Plaintiff received a copy of the fully executed Agreement (and ***now twelve (12) days after receiving the settlement funds***).

As BANA has now substantially complied with all terms of the Agreement, Plaintiff's Request is truly baseless. The Parties have fully executed the Agreement; Plaintiff has cashed all settlement funds; Plaintiff's counsel has been paid a considerable fee; yet, Plaintiff and her attorneys refuse to file a dismissal or withdraw the Request. Accordingly, this Court should deny Plaintiff's Request and direct Plaintiff to submit an order of dismissal *with prejudice* for the Court's review.

### III. ARGUMENT

#### A. Legal Standard of Review

The law in this matter is well-settled, as "[t]here is a long history of cases recognizing a court's inherent powers to impose sanctions." *Hadid v. Alhegelan*, 2000 U.S. Dist. LEXIS 2394, 11-12 (E.D. Va. Feb. 4, 2000) (citing *Chambers v. Nasco, Inc.*, 501 U.S. 32, 43, 115 L. Ed. 2d 27, 111 S. Ct. 2123 (1991); *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 259, 44 L. Ed. 2d 141, 95 S. Ct. 1612 (1975) (acknowledging a court's inherent power to

assess attorney fees for bad faith, vexatiousness, or wanton and oppressive behavior) (citations omitted)). Further, the Eastern District of Virginia has set forth guidelines for when a court should exercise these powers and has encouraged other courts similarly situated to heed its warning. "[A] court should be cautious, resorting to sanctions under its inherent power only in three circumstances: (1) where a party's litigation directly benefits others; (2) where a party willfully disobeys a court order; or (3) where a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Hadid*, 2000 U.S. Dist. LEXIS 2394 at *12 (citing *Chambers*, 501 U.S. at 45-46; *Strag Bd. of Tr.*, 55 F.3d 943, 955 (4th Cir. 1995)); see *also U.S. v. Shaffer Equip. Co.*, 11 F.3d 450, 461-62 (4th Cir. 1993) (recognizing a district court's inherent power to impose sanctions).

This case does not present allegations fitting into any of the three (3) sets of circumstances.

### B. Plaintiff's causes of action alleged in the FAC were not for the benefit of others.

The first such instance recognized as being worthy of sanctions pertains to suits filed for the direct benefit of others. *Hadid*, 2000 U.S. Dist. LEXIS 2394 at *12. This is a rarity in today's world with the proliferation of class actions. However, in its time a court could issue sanctions under its innate powers for those lawsuits instituted for a common good or common people with similar circumstances. The Supreme Court explained that "the usual case is one where through the complainant's efforts a fund is recovered in which others share. Sometimes the complainant avowedly sues for the common interest while in others his litigation results in a fund for a group though he did not profess to be their representative." *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 166, 59 S. Ct. 777, 779-80 (1939) ("[T]he petitioner, by establishing her

claim, necessarily established the claims of fourteen other trusts pertaining to the same bonds.") (footnotes omitted).

Plaintiff's FAC asserted causes of action against BANA for: (1) Defamation; (2) Fraud; (3) Breach of Contract; and (4) Violation of the Real Estate Settlement Procedures Act ("RESPA"). Even under the most liberal reading, it cannot be successfully argued that Plaintiff filed these claims for the benefit of others. Therefore, this circumstance is inapplicable to the facts before the Court. Accordingly, the Court should deny Plaintiff's Request.

### C. <u>BANA did not willfully disobey the Court's Order.</u>

After a series of unintentional miscues and ordinary delays, this Court issued its present, standing order with regard to the compliance of the "***monetary terms*** of the parties' settlement agreement" on September 13, 2012. (Doc. 21 (emphasis added).) That Order directed BANA to have the funds delivered to the office of Hoover Penrod PLC no later than noon on September 18, 2012. *Id.* However, an unknown employee of BANA hurriedly issued a single check instead of two (2).

This occurrence, like the others relevant to consummating this settlement, was not willful. BANA took the necessary steps to comply with the Court's Order; however, accidental human error came into play. Upon learning of the error, BANA's counsel immediately contacted Plaintiff's counsel by e-mail to determine how this could best be handled and whether another request for separate checks was to be sent to Accounts Payable. BANA was informed that Plaintiff's counsel would take care of the situation by taking the check to a Bank of America branch. It was handled, and Plaintiff, along with her counsel, received the monies bargained for at the Conference.

Since this act or alleged violation of the Order was not willful, the second circumstance is inapplicable to this set of facts also. Thus, there is no need for a hearing on sanctions and this Court should not grant Plaintiff's Request.

### D. Given that there was no malice, wantonness or ill-will, this Court should not conduct a hearing for sanctions.

The third instance where a court can exercise its inherent powers for sanctions is "where a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Hadid*, 2000 U.S. Dist. LEXIS 2394 at *12. As stated throughout this Response, BANA's actions were not conducted in bad faith, nor were they done for any oppressive, wanton or annoying reasons.

There were certainly delays in concluding this matter, and there was also the instance of an inadvertent mistake as to the manner by which the settlement funds were presented to Plaintiff. At the time Plaintiff filed her Request, there was even an unintentional signing of different versions of the Agreement that needed to be addressed – a happenstance that is now, too, corrected. At no time were any actions done with malice or ill-will towards Plaintiff. As a result, the third and final circumstance is also inapplicable to this set of facts. This Court should deny Plaintiff's Request as moot.

### E. Conducting a hearing will only incur more unnecessary fees.

At some point this post-settlement motions practice must stop. The only result is that Plaintiff and Defendant are incurring more legal fees – fees that Plaintiff's counsel is ***voluntarily taking upon himself***. In this type of instance, countless reasonable attorneys withdraw their motion and seek to have the hearing removed from the court's calendar.

Throughout the afternoon conference call of October 3rd, BANA's counsel sought to obtain such a figure from Plaintiff's counsel for time spent on this matter; however, counsel for

Plaintiff curiously argued that it would somehow take more than an hour of his time to explain the situation to Ms. Summers to determine if she would, in fact, consent to withdrawing the Request. Counsel also contended that it would cost Ms. Summers less to move forward with a formal hearing than to explain the current situation to her. This is nonsensical.[1]

No matter how the situation plays out, it seems Plaintiff will keep receiving bills from her attorneys unless this Court denies her Request. It now seems apparent that Plaintiff's counsel merely seeks to punish and make an example of BANA, all the while, his client keeps getting billed. This is not only improper, but a blatant waste of judicial resources and the Court should deny Plaintiff's Request.

### F. This Court should grant BANA's Motion for Enforcement of Settlement Agreement.

In determining whether a settlement agreement must be enforced, Courts will first "ascertain whether the parties have in fact agreed to settle" and then proceed to "discern the terms of the settlement agreement." *Power Servc., Inc. v. MCI Constructors, Inc.*, 36 Fed. Appx. 123, 124 (4th Cir. 2002). "The guiding light in the construction of a contract is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares." *Watson v. United Consumers, Inc.*, 2010 U.S. Dist. LEXIS 58916, 6-7 (E.D. Va. June 14, 2010) (citing *Wilson v. Holyfield*, 227 Va. 184, 187, 313 S.E.2d 396, 398 (1984)). Once a party objectively manifests its intention to compromise and then "acts affirmatively to enter into such settlement, [that party's] second thoughts at a later time upon the wisdom of the settlement do not constitute good cause for setting it aside." *Holland v. Va. Lee Co.*, 188 F.R.D. 241, 250 (W.D. Va. 1999);

---

[1] Finally, late in the day Thursday, October 4, 2012, Plaintiff's counsel sent an e-mail "settlement demand." Plaintiff's demand was exorbitant and simply confirmed that counsel is out for BANA's blood.

*Snyder-Kalkinham v. Stockburger*, 249 Va. 376, 385 (1995). Thus, it is well-established in Virginia that compromise and settlement of a suit or disputed claim is binding unless it is shown that it was the result of fraud, mistake, or undue advantage. *Va. Lee Co.*, 188 F.R.D. at 250 (citing *Metrocall of Del., Inc. v. Continental Cellular Corp.*, 246 Va. 365, 437 S.E.2d 189, 193 (1993)).

Here, there is no doubt that the Parties entered into a valid and enforceable settlement that was not the result of fraud, mistake or undue advantage. The Parties executed a clear, unambiguous agreement that addresses Plaintiff's lawsuit and claims against BANA, and provides ample consideration for both Parties. This Agreement was drafted and executed by attorneys who reviewed it carefully. Certainly Plaintiff was informed of her rights. There was no fraud, duress, or coercion related to Plaintiff's entering into the settlement, or her execution of the Agreement. There was likewise no mistake or undue advantage in arriving at the settlement or in executing the Agreement.

The monetary terms of the Agreement have been complied with; the only missing component is Plaintiff's submission to this Court of an Order for Dismissal *with Prejudice*. Given Plaintiff's outright refusal to do so, BANA seeks the Court's intervention to direct Plaintiff to comply and end this bickering once and for all.

### IV.   CONCLUSION

For the reasons set forth above, Plaintiff's Request for Hearing for Motion for Sanctions for Defendant's Failing to Complete Settlement Agreement should be denied. Further, this Court should direct Plaintiff's counsel to submit an order of dismissal *with prejudice* for entry, award BANA's attorneys' fees and costs expended in its defense of this Request, award BANA its attorneys' fees associated with the filing of this Motion for

Enforcement of Settlement Agreement, and such other and further relief as the Court may deem appropriate.

Dated: October 5, 2012

Respectfully submitted,

**BANK OF AMERICA, N.A.**

*By Counsel*

  /s/ C. Paige Bobick
C. Paige Bobick (VSB No. 75599)
MCGUIREWOODS LLP
Court Square Building
310 Fourth Street, N.E., Suite 300
Post Office Box 1288
Charlottesville, Virginia  22902
(434) 977-2593 (telephone)
(434) 980-2273 (facsimile)

*Counsel for Bank of America, N.A.*

## CERTIFICATE OF SERVICE

I hereby certify that on October 5, 2012, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system which will send notification to all counsel of record including the following:

>Grant D. Penrod, Esq.
>HOOVER PENROD, PLC
>342 South Main Street
>Harrisonburg, Virginia  22801
>
>Thomas D. Domonoske, Esq.
>461 Lee Avenue
>Harrisonburg, Virginia  22802
>
>*Counsel for Plaintiff*

>  /s/ C. Paige Bobick
> C. Paige Bobick (VSB No. 75599)
> MCGUIREWOODS LLP
> Court Square Building
> 310 Fourth Street, N.E., Suite 300
> Post Office Box 1288
> Charlottesville, Virginia  22902
> (434) 977-2593 (telephone)
> (434) 980-2273 (facsimile)
>
> *Counsel for Bank of America, N.A.*